Case 1:00-cv-01639-JAS   Document 57-4   Filed 05/19/2003   Page 1 of 7



# Conrad M. Siegel, Inc.
## Actuaries/Benefit Consultants

501 Corporate Circle • P.O. Box 5900 • Harrisburg, PA 17110-0900
PHONE (717) 652-5633 • FAX (717) 540-9106 • www.cmsbenefits.com

Conrad M. Siegel, F.S.A.

Harry M. Leister, Jr., F.S.A.

Clyde E. Gingrich, F.S.A.

Earl L. Mummert, M.A.A.A.

Robert J. Dolan, A.S.A.

David F. Stirling, A.S.A.

Robert J. Mrazik, F.S.A.

David H. Killick, F.S.A.

Jeffrey S. Myers, F.S.A.

Thomas L. Zimmerman, F.S.A.

Glenn A. Hafer, F.S.A.

Kevin A. Erb, F.S.A.

Frank S. Rhodes, F.S.A., A.C.A.S.

Holly A. Ross, F.S.A.

Charles B. Friedlander, F.S.A.

John W. Joffrey, F.S.A.

Denise M. Polin, F.S.A.

Thomas W. Reese, A.S.A.

Janel M. Leymeister, CEBS

Mark A. Bonsall, F.S.A.

Jonathan D. Cramer, A.S.A.

John D. Vargo, A.S.A.

David H. Stimpson, E.A.

Robert M. Ghus, A.S.A.

April 3, 2003

Marcus A. McKnight, III, Esq.
Irwin McKnight & Hughes
West Pomfret Professional Bldg.
60 West Pomfret Street
Carlisle, PA 17013-3222

Re:   John D. Perkey

Dear Mr. McKnight:

You indicated that John D. Perkey was born on October 18, 1948, and that he incurred a disability as a result of an accident on September 15, 1998.

Currently, John D. Perkey is 54.5 years of age. The life expectancy for a white male age 54.5 is an additional 23.0 years. This implies an expected age at death of 77.5 (54.5 + 23.0). The life expectancy is based upon a publication of the U.S. Department of Health and Human Services entitled *U.S. Decennial Life Tables for 1989-91*.

For many years, Mr. Perkey had been employed as a tractor trailer driver.

The U.S. Individual Income Tax Return for John D. Perkey and Theresa M. Perkey for 1998 indicates that Mr. Perkey was paid wages of $50,253. The tax return also indicates that his business expenses amounted to $1,701. Thus, his net wages from the beginning of 1998 until the date of his accident on September 15 of that year amounted to $48,552 ($50,253 less $1,701).

Mr. Perkey has been unable to work since the date of the accident and for the purpose of this preliminary report I have assumed that he is totally and permanently disabled.

The following table shows the mileage rates based upon the National Master Freight Agreement and Central Pennsylvania's Supplemental Agreement for the period April 1, 1998, through March 31, 2003:

| Date | Mileage Rate |
|---|---|
| 9-15-1998 | 46.625¢ |
| 4-01-1999 | 47.50¢ |
| 4-01-2000 | 48.375¢ |
| 4-01-2001 | 49.250¢ |
| 4-01-2002 | 50.125¢ |

Exhibit A

 Conrad M. Siegel, Inc.

Marcus A. McKnight, III, Esq.
April 3, 2003
Page 2

The annualized rate of earnings for Mr. Perkey on the date of his accident amounted $68,688. This was determined by annualizing his actual earnings up until the date of the accident of $48,552.

The following table shows the annual rate of pay:

| Date | Annual Rate of Pay |
|---|---|
| 9-15-1998 | $68,688 |
| 4-01-1999 | 69,977 |
| 4-01-2000 | 71,266 |
| 4-01-2001 | 72,555 |
| 4-01-2002 | 73,844 |

The annual rate of pay for dates subsequent to September 15, 1998, was determined by multiplying by the percentage increase in the mileage rate from September 15, 1998, to the dates indicated in the above table. For example, the annual rate of pay of $69,977 as of April 1, 1999, was determined by multiplying $68,688 by $47.50 and dividing by 46.625¢.

The total loss of earnings capacity based upon a work life expectancy until age 65 amounts to $1,097,348.

The following table shows the rate of contributions per hours worked for the health & welfare and pension fund based upon data taken from the National Master Freight Agreement and Central Pennsylvania Supplemental Agreement for the period April 1, 1998, through March 31, 2003:

| Date | Contributions For | | Total | Yearly Value |
|---|---|---|---|---|
| | Health & Welfare | Pension Fund | | |
| 9-15-1998 | $2.89 | $4.305 | $ 7.195 | $14,966 |
| 4-01-1999 | $3.19 | $4.605 | $ 7.795 | $16,214 |
| 4-01-2000 | $3.74 | $5.155 | $ 8.895 | $18,502 |
| 4-01-2001 | $4.14 | $5.555 | $ 9.695 | $20,166 |
| 4-01-2002 | $4.34 | $5.755 | $10.095 | $20,998 |

The yearly value in the above table was determined by multiplying the total contributions by 2,080.

The total loss of fringe benefits (contributions for health & welfare and pension fund) based upon working until age 65 amounts to $303,842.

 Conrad M. Siegel, Inc.

Marcus A. McKnight, III, Esq.
April 3, 2003
Page 3

A summary of the loss calculations previously indicated in this report are as follows:

| | |
|---|---|
| Loss of Earnings Capacity | $1,097,348 |
| Loss of Fringe Benefits | 303,842 |
| Total Loss | $1,401,190 |

The value of the future amounts does not reflect a discount for interest in view of the Kaczkowski v. Bolubasz decision.

This is a preliminary report.

With best regards,

Yours sincerely,

*Harry M. Leister, Jr.*

Harry M. Leister, Jr., F.S.A.
Consulting Actuary

HML:kad

Case 1:00-cv-01639-JAS   Document 57-4   Filed 05/19/2003   Page 3 of 7

E
X
H
I
B
I
T
S

p.m.  Go ahead.

BY MR. GODFREY:

Q.      Now, Doctor, you've testified about Mr.
Perkey's ability to work.  Am I correct in that Mr. Perkey
in your opinion is not totally disabled in that he cannot
do any job?

A.      Correct.  I mean, there are jobs he could
probably do.  What I testified to is that he had an FCE in
2000 and if somebody wanted to get absolute parameters,
then we would do an updated FCE.

Q.      Now, Doctor, you had indicated about FCEs,
that would be the Functional Capacity Evaluations, correct?

A.      That's correct.

Q.      And if I remember your testimony correctly,
you indicated that these were objective findings that help
you quantify?

A.      The FCE is objective and subjective.

Q.      Okay.  In that it helps take a person's
subjective complaints and quantify them for you.  I believe
that was your testimony.

A.      No.  What it does is it gives you an
objective finding in terms of capabilities.  In terms -- I
used the comment, you know, can somebody lift 10 pounds?
Can they lift 11 pounds?  And so you can physically test
them to reproduce, to get some numbers that you can work

EXHIBITS

1    Q.    Meaning no rotator cuff tear?

2    A.    That's correct.

3    Q.    Just so I'm aware, Mr. Perkey's right

4  shoulder injury does not render him totally disabled,

5  correct, Doctor?

6    A.    No, it does not render him totally disabled.

7    Q.    Now, you've testified about some herniated

8  discs.  I'd like to talk about the lower lumbar spine.  You

9  ordered an MRI October 5th, 1998 done on October 7th; is

10  that correct?

11    A.    That's correct.

12    Q.    And wouldn't you agree with me, Doctor, that

13  there was no evidence of any herniated disc in the lumbar

14  spine?

15    A.    Well, we don't see any evidence in that

16  unfortunately because of the hardware that Mr. Perkey has

17  in his back, it's tough to make an absolute assessment.

18  But we don't see any definitive evidence, that's correct.

19    Q.    So I'm clear, there was no evidence of a

20  herniated disc, correct?

21    A.    I did not see any.  That's correct.

22    Q.    Okay.  Now, it did show the dissection at the

23  L5-S1 area; is that not correct, Doctor?

24    A.    Yes.

25    Q.    And wouldn't that be basically the drawing

1    Q.    Okay.  Doctor, just so the jury is aware,

2  you're not claiming today that Mr. Perkey is totally

3  disabled?

4    A.    No.

5    Q.    Okay.

6    A.    I don't think I've ever stated that he's 100

7  percent disabled.  I stated that in my opinion, if it's

8  necessary to -- I have made the opinion -- in my opinion

9  it's very unlikely that he would -- I would not recommend

10  him to go back to an over the road truck driving position

11  period.

12    Q.    But Could --

13    A.    That's my opinion.  Now, if you say work.

14  You know, it's kind of -- what is the definition of work?

15  I'm not being silly.

16         But just the other day I was asked to approve

17  a job of a telephone solicitation.  I know he's not calling

18  me because I got on that thing where they're not allowed to

19  call you.  But this gentleman's job, he can do at home.

20  They're going to provide him a telephone and a 15 foot cord

21  with a headset.

22         Can anybody do that?  Well, sure.  He could

23  lay down in bed and do that.  They'll allow him to lay

24  down.  They'll let him stand, sit, whatever.  I mean, it's

25  the first time I've been asked to comment on a job like

## <u>CERTIFICATE OF SERVICE</u>

AND NOW, this _19th_ day of May, 2003, I, E. Ralph Godfrey, Esquire, of Godfrey &

Courtney, P.C., attorneys for Defendants Reliable Carriers, Inc. and Daniel Joseph Bemben,

hereby certify that I served the foregoing Motion in Limine this day by depositing the same in the

United States mail, postage prepaid, in Harrisburg, Pennsylvania, addressed to:


      Marcus McKnight, Esquire
      Mark D. Schwartz, Esquire
      Irwin, McKnight & Hughes
      60 West Pomfret Street
      Carlisle, PA 17013

                     E. Ralph Godfrey