UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOHN D. PERKEY AND            :    **CIVIL NO. 1:00-CV-1639**
THERESA M. PERKEY,            :
                              :
            Plaintiffs        :
                              :
        v.                    :    (Magistrate Judge Smyser)
                              :
RELIABLE CARRIERS, INC.,      :
DANIEL JOSEPH BEMBEN,         :
AND KENT,                     :
                              :
            Defendants        :


### MEMORANDUM AND ORDER


    The plaintiffs, John E. Perkey and Theresa M. Perkey,
commenced this action by filing a complaint on September 14, 2000.
The defendants named in the complaint are Reliable Carriers, Inc.,
Daniel Joseph Bemben, and Kent.  The plaintiffs' claims arise out
of an automobile accident.  The plaintiff was allegedly injured
when the vehicle he was driving came into contact with trailer
wheels which had broken away from an axle of the trailer being
hauled by defendant Bemben.  Bemben was operating the tractor-
trailer for Reliable Carriers, Inc. and the trailer from which the
wheels has broken away was allegedly manufactured and/or designed
by Kent.

Defendants Reliable Carriers, Inc. and Daniel Joseph Bemben filed an answer to the complaint and a cross-claim against defendant Kent on January 29, 2001. Defendant Kent has not filed an answer to either the complaint or the cross-claim. It appears that defendant Kent may not have been served with the summons and complaint in this case.

On February 16, 2001, a case management conference was held and a case management order was entered.

On October 12, 2001, the defendants filed a motion for a stay. The defendants asserted that they are insureds of Reliance Insurance Company. On October 3, 2001, the Commonwealth Court of Pennsylvania entered an order of liquidation of Reliance Insurance Company. The Order of the Commonwealth Court stayed for 90 days all proceedings in the courts of the Commonwealth of Pennsylvania in which Reliance is obligated to defend a party. The Order also requested on comity grounds that courts outside Pennsylvania and federal courts stay for 90 days any suit in which Reliance is obligated to defend a party.

By an Order dated October 26, 2001, the defendants'
motion for a stay was granted and this case was stayed for 90 days.
That stay was subsequently extended until April 3, 2002.

The parties consented to proceed before a magistrate
judge pursuant to 28 U.S.C. § 636(c).  The case is scheduled for a
jury trial beginning on July 7, 2003.

On April 15, 2003, the defendants filed a motion for
summary judgment.  By an Order dated May 30, 2003, we denied the
defendants' motion for summary judgment as well as a motion to
intervene and a motion for leave of court to respond to the
defendants' motion for summary judgment filed by ABF Freight
Systems, Inc.  ABF Freight was the plaintiff's employer and was
self-insured for workers' compensation benefits.  ABF Freight paid
to the plaintiff workers' compensation benefits.  The issue
underlying the defendants' motion for summary judgment and ABF
Freight's motion to intervene was whether or not the defendants are
entitled to a setoff against any verdict in the amount of workers'
compensation payments paid to the plaintiff as a result of the
accident.  Although we denied the defendants' motion for summary
judgment we indicated that because the issue of a setoff for
workers compensation benefits may arise post-trial we would address

3

the issue and indicate how we would rule if the issue were to be
raised after a verdict from the jury is received.  We concluded
that the defendants would be entitled to a setoff.  Given that
conclusion, we further concluded that ABF Freight has no
subrogation interest and we, accordingly, denied ABF Freight's
motion to intervene and motion for leave to respond to the
defendants' motion for summary judgment.

On June 9, 2003, ABF Freight filed a motion for
reconsideration of the Order of May 30, 2003.  ABF Freight contends
that the court erred in concluding that the defendants are entitled
to a setoff and that, therefore, ABF Freight has no subrogation
interest in this case.

"The purpose of a motion for reconsideration is to
correct manifest errors of law or fact or to present newly
discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,
909 (3d Cir. 1985).  A district court may grant a party's motion
for reconsideration when there exists: "(1) the development of an
intervening change in the law, (2) the emergence of new evidence
not previously available, or (3) the need to correct a clear error
of law or prevent a manifest injustice."  *Cohen v. Austin*, 869 F.
Supp. 320, 321 (E.D.Pa. 1994).   If there is no new evidence or no

4

clear error of law, the motion must be denied. *Clifford v. Jacobs*, 739 F. Supp. 957, 958-59 (M.D.Pa. 1990). Mere disagreement with the court does not translate into a clear error of law. *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F.Supp. 595, 611 (M.D. Pa. 1996). "A motion for reconsideration is not a tool to relitigate and reargue issues which have already been considered and disposed of by the court." *Id*. "Nor is it to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment. *Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310, 314 (M.D. Pa. 1994), *aff'd*, 31 F.3d 1175 (3d Cir. 1994). In the interest of finality, courts should grant motions for reconsideration sparingly. *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D.Pa. 1992).

We addressed the issue of the defendants' right to a setoff as follows in the May 30, 2003 Memorandum and Order:

> The issue of a possible set-off arises because the defendants' insurance company has been liquidated and the Michigan Property and Casualty Guaranty Association (MPCGA) has assumed the duty to defend and indemnify the defendants in this action.

> The parties cite to both the Michigan and Pennsylvania Property and Casualty Insurance Guaranty Acts. A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v.*

5

*Stentor Electric Mfg. Co.*, 313 U.S. 487, 497
(1941); *Kruzits v. Okuma Mach. Tool, Inc.*, 40
F.3d 52, 55 (3d Cir. 1994). Pennsylvania is
the forum state for this court. "Under
Pennsylvania's choice of law rules, a court
must first determine whether a conflict of law
exists, and if no conflict exists, it may
apply Pennsylvania law." *Scirex Corp. v.
Federal Ins. Co.*, 313 F.3d 841, 847 n.1 (3d
Cir. 2002). Neither party has argued that
there is conflict between Michigan and
Pennsylvania law. Accordingly, we apply
Pennsylvania law although we cite both
Michigan and Pennsylvania law.

MPCGA was created by and its duties arise
from the Michigan Property and Casualty
Guaranty Association Act. Mich.Comp.Laws Ann.
§ 500.7901 et. seq. Similarly, the
Pennsylvania Property and Casualty Insurance
Guaranty Association (PPCIGA) was created by
and its duties arise from the Pennsylvania
Property and Casualty Insurance Guaranty
Association Act. 40 P.S. § 991.1801 et seq.
Both MPCGA and PPCIGA are associations of
insurers in their respective states authorized
to transact business in insurance.
Mich.Comp.Laws Ann. § 500.7911; 40 P.S. §
991.1802 (definition of member insurer).
Membership in MPCGA, or in PPCIGA, is a
condition of an insurer's authority to
continue to transact business as an insurer in
the respective state. Mich.Comp.Laws.Ann. §
500.7911; 40 P.S. § 991.1803(a). MPCGA and
PPCIGA are funded by assessments levied upon
all member insurers. Mich.Comp.Laws Ann.
§ 500.7941; 40 P.S. § 991.1808.

Under the Michigan Guaranty Act, MPCGA
shall "pay and discharge covered claims for
the amount by which each covered claim exceeds
$10.00." Mich.Comp.Laws Ann. § 500.7931(a).
Under the Pennsylvania Guaranty Act, PPCIGA
generally shall pay covered claims up to an
amount of $300,000. 40 P.S. § 991.1803 (b).

6

Covered claims are defined under the Michigan
Guaranty Act as obligations of an insolvent
insurer which 1) arise out of the insurance
policy contracts of the insolvent insurer
issued to residents of Michigan or payable to
residents of Michigan on behalf of insureds of
the insolvent insurer; 2) were unpaid by the
insolvent insurer; 2) are presented as a claim
to the receiver in Michigan or the association
on or before the last date fixed for the
filing of claims in the domiciliary
delinquency proceedings; 4) were incurred or
existed before, at the time of, or within 30
days after the date the receiver was
appointed; 5) arise out of insurance policy
contracts issued on or before the last date on
which the insolvent insurer was a member
insurer. Mich.Comp.Laws Ann. § 500.7925(1).
A covered claim is defined under the
Pennsylvania Guaranty Act as "an unpaid claim,
including one for unearned premiums, submitted
by a claimant, which arises out of and is
within the coverage and is subject to the
applicable limits of an insurance policy to
which this article applies issued by an
insurer if such insurer becomes an  insolvent
insurer after the effective date of this
article and . . .  the claimant or insured is
a resident of this Commonwealth at the time of
the insured event . . . or the property from
which the claim arises is permanently located
in this Commonwealth." 40 P.S. § 991.1802.
Under both the Michigan and Pennsylvania Acts
covered claims do not include *inter alia* any
amount in excess of an applicable limit
provided in the insurance policy.
Mich.Comp.Laws Ann. § 500.7925(2); 40 P.S. §
991.1803(b)(1)(ii).  Further, both Acts
exclude from the definition of covered claims
any amount due an insurer.  Mich.Comp.Laws
Ann. § 500.7925(2)("Covered claims shall not
include obligations to an insurer . . ."); 40
P.S. § 991.1802 ("The term shall not include
any amount . . . due any . . . insurer . . .
as subrogation recoveries or otherwise.").

7

The Michigan Guaranty Act contains a non-duplication of recovery provision which provides:

> If damages or benefits are recoverable by a claimant or insured under an insurance policy other than a policy of the insolvent insurer, or from the motor vehicle accident claims fund, or a similar fund, the damages or benefits recoverable shall be a credit against a covered claim payable under this chapter. If damages against an insured who is not a resident of this state are recoverable by a claimant who is a resident of his state, in whole or in part, from any insolvency fund or its equivalent in the state where the insured is a resident, the damages recoverable shall be a credit against a covered claim payable under this chapter. An insurer of a fund may not maintain an action against an insured of the insolvent insurer to recover an amount which constitutes a credit against a covered claim under this section. An amount paid to a claimant in excess of the amount authorized by this section may be recovered by an action brought by the association.

Mich.Comp.Laws Ann. § 500.7931(3).

The Pennsylvania Guaranty Act provides a non-duplication of recovery provision which provides:

> Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is

8

a first-party or third-party claim,
and shall include, without
limitation, accident and health
insurance, worker's compensation,
Blue Cross and Blue Shield and all
other coverages except for policies
of an insolvent insurer. Any amount
payable on a covered claim under
this act shall be reduced by the
amount of any recovery under other
insurance.

40 P.S. § 991.1817(a).

The defendants' contention that they are
entitled to a setoff against any verdict
against them in the amount of workers
compensation benefits received by the
plaintiff is based on the non-duplication of
recovery provision. The parties appear to
agree that if the non-duplication of recovery
provision is applicable and a credit against a
covered claim under the Guaranty Act is
appropriate, a proper method to apply the
credit is by the court molding the verdict
after trial. *See Baker v. Myers*, 773 A.2d
782, 793 (Pa.Super.Ct. 2001)("[W]e find the
non-duplication of recovery provision applies
with equal vigor to a jury verdict and may be
applied in post-trial proceedings to mold the
verdict."). *See also Corrigan v. Methodist
Hospital*, 234 F.Supp.2d 494, 506 (E.D.Pa.
2002)(molding verdict to reflect an offset for
workers' compensation benefits received by the
plaintiff).

Had the plaintiff received his workers'
compensation benefits from an insurance
company it would be clear that a setoff would
be appropriate. However, in this case the
plaintiff received his workers compensation
benefits from his employer, ABF Freight
Systems, Inc., which is self-insured for
workers' compensation benefits. We conclude
that ABF Freight, as a self-insured employer

9

who paid workers' compensation benefits,
should be treated the same as an insurance
company who paid workers' compensation
benefits.

Both the Michigan and Pennsylvania non-
duplication of recovery provisions use the
term "insurance policy." The plaintiff did
not receive his workers' compensation benefits
pursuant an "insurance policy" as that term is
commonly understood.

Pursuant to Pennsylvania's Workers'
Compensation Act, ABF Freight is deemed to be
an insurer. 77 P.S. § 29 (2002). Also,
pursuant to Pennsylvania's Workers'
Compensation Act, ABF Freight has a right of
subrogation against any recovery by the
plaintiff. 77 P.S. § 671. The Guaranty Acts
exclude from the definition of "covered
claims" obligations to an insurer. It could
be argued that since ABF Freight is deemed to
be an insurer under the Workers' Compensation
Act, any amount awarded to the plaintiff that
would in turn be payable to ABF Freight
pursuant to its subrogation interest is
excluded from the definition of a covered
claim and can not be recovered by the
plaintiff. On the other hand, ABF Freight
cites the definition of insurer in the
Pennsylvania Guaranty Act. The Pennsylvania
Act defines "Insurer" or "member insurer" as
"[a]ny insurance company, association or
exchange which is licensed to write and is
engaged in writing within this Commonwealth,
on a direct basis, property and casualty
insurance policies." 40 P.S. § 991.1802. The
Pennsylvania Act specifically defines
"property and casualty insurance policy" to
exclude "workmen's compensation and employer's
liability insurance." 40 P.S. §991.1802. ABF
Freight does not meet the definition of
insurer in the Pennsylvania Guaranty Act.

Nevertheless, we believe that the workers compensation benefits received by the plaintiff should be deemed to be received pursuant to an insurance policy as that term is used in the non-duplication of recovery provisions of the Guaranty Acts.  The Pennsylvania non-duplication of recovery provision defines a claim under an insurance policy to include "worker's compensation." ABF Freight undertook to act as an insurer for purposes of workers' compensation benefits and it should be held to the same risks as an insurer, one of those risks being that it may not be able to recover pursuant to its subrogation rights when one of its workers is injured by a tortfeasor whose insurance company becomes insolvent.   Accordingly, we conclude that the defendants are entitled to a setoff against any verdict against them in the amount of the workers' compensation payments paid to the plaintiff as a result of the accident at issue in this case. *See Ventulett v. Maine Ins. Guaranty Assoc.*, 583 A.2d 1022, 1024 (Me. 1990)("Our holding that the presence of a deductible, the effect of which was to render Pennsylvania Truck Lines self-insured to the extent of Ventulett's compensation claim, makes no difference to the result of this particular case is reinforced by the fact that the workers' compensation law of Massachusetts under which Ventulett received compensation benefits defines as self-insuring employer as an 'insurer' for the purpose of its asserting subrogation rights against a third-party tortfeasor."); *Harris County v. Williams*, 981 S.W.2d 936, 941 (Tex.App. 1998)(holding that self-insured county's subrogation claim was excluded by the Texas Guaranty Act and stating that "[w]e will not distinguish between governmental entities that self-insure and those governmental entities that provide workers's compensation coverage under an insurance policy."). *But see Doucette v. Pomes*, 724 A.2d 481, 494 (Conn. 1999)("We join, therefore, the majority of courts that

11

> have decided the status of self-insured
> employers under an insurance guaranty act, and
> we hold that self-insureds employers are not
> insurers for purposes of Connecticut's
> guaranty act.").

*Memorandum and Order of May 30, 2003* at 6-14.

ABF Freight argues that the court erred in concluding that the defendants are entitled to a setoff and that, therefore, ABF Freight has no subrogation interest in this case. ABF Freight makes the same arguments it made in its motion to intervene and that the plaintiff made in opposition to the defendants' motion for summary judgment. The court has already considered those arguments. There is no basis for this court to reconsider its May 30, 2003 Order. If we erred in determining that the defendants are entitled to a setoff and that ABF has no subrogation interest in this case, the proper procedure to correct such an error is through an appeal at the appropriate time.

We note that ABF Freight cites the case of *Miles v. Van Meter*, 628 A.2d 1159 (Pa. Super. Ct. 1993). In *Miles*, the Pennsylvania Superior Court held that the Pennsylvania Workers' Compensation Security Fund could assert a subrogation lien against a claimant's recovery from an out-of-state insurance guaranty association. The court based its decision on its conclusion that

12

the Pennsylvania Workers' Compensation Security Fund did not meet the definition of insurer under the Pennsylvania Guaranty Act.

As the court in *Miles* concluded that the Pennsylvania Workers' Compensation Security Fund was not an insurer under the Act*,* we concluded that "ABF Freight does not meet the definition of insurer in the Pennsylvania Guaranty Act." *Memorandum and Order of May 30, 2003* at 13.  Unlike the court in *Miles,* we nevertheless went on to conclude that the workers' compensation benefits received by the plaintiff were received pursuant to an insurance policy as that term is used in the non-duplication of recovery provision which defines a claim under an insurance policy to include "worker's compensation."   *Miles* is distinguishable from this case because *Miles* was decided before the non-duplication of recovery provision in the Pennsylvania Guaranty Act was amended to specifically define a claim under an insurance policy to include "worker's compensation."

13

AND NOW, this 11th day of June, 2003, **IT IS HEREBY**

**ORDERED** that the motion (doc. 70) for reconsideration filed by ABF

Freight Systems, Inc. is **DENIED.**


                                          _/s/ J. Andrew Smyser_
                                          J. Andrew Smyser
                                          Magistrate Judge

DATED:  June 11, 2003.

14