UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN D. PERKEY AND             :    CIVIL NO. 1:00-CV-1639
THERESA M. PERKEY,             :
                               :
          Plaintiffs           :
                               :
     v.                        :    (Magistrate Judge Smyser)
                               :
RELIABLE CARRIERS, INC.,       :
DANIEL JOSEPH BEMBEN,          :
AND KENT,                      :
                               :
          Defendants           :

## MEMORANDUM AND ORDER

The plaintiffs, John E. Perkey and Theresa M. Perkey, commenced this action by filing a complaint on September 14, 2000. The defendants named in the complaint are Reliable Carriers, Inc., Daniel Joseph Bemben, and Kent.  The plaintiffs' claims arise out of an automobile accident.  The plaintiff was allegedly injured when the vehicle he was driving came into contact with trailer wheels which had broken away from an axle of the trailer being hauled by defendant Bemben.  Bemben was operating the tractor-trailer for Reliable Carriers, Inc. and the trailer from which the wheels has broken away was allegedly manufactured and/or designed by Kent.

EXHIBIT "A"

Defendants Reliable Carriers, Inc. and Daniel Joseph Bemben filed an answer to the complaint and a cross-claim against defendant Kent on January 29, 2001. Defendant Kent has not filed an answer to either the complaint or the cross-claim. It appears that defendant Kent may not have been served with the summons and complaint in this case. Any reference to "defendants" hereafter is a reference to defendants Reliable Carriers, Inc. and Bemben.

On February 16, 2001, a case management conference was held and a case management order was entered.

On October 12, 2001, the defendants filed a motion for a stay. The defendants asserted that they are insureds of Reliance Insurance Company. On October 3, 2001, the Commonwealth Court of Pennsylvania entered an order of liquidation of Reliance Insurance Company. The Order of the Commonwealth Court stayed for 90 days all proceedings in the courts of the Commonwealth of Pennsylvania in which Reliance is obligated to defend a party. The Order also requested on comity grounds that courts outside Pennsylvania and federal courts stay for 90 days any suit in which Reliance is obligated to defend a party.

2

MAY-30-2003  04:16PM    FROM-IRWIN, MCKNIGHT & HUGHES LAW OFFICES    +7172496954    T-788    P.0227036    F-800

By an Order dated October 26, 2001, the defendants' motion for a stay was granted and this case was stayed for 90 days. That stay was subsequently extended until April 3, 2002.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).  The case is scheduled for a jury trial beginning on July 7, 2003.

On April 15, 2003, the defendants filed a motion for summary judgment, a statement of material facts, a brief and documents in support of their motion.  On April 30, 2003, the plaintiffs filed a counter-statement of material facts and a brief in opposition to the motion for summary judgment.  On May 9, 2003, the defendants filed a reply brief.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each

3

element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

The following facts are not in dispute for purposes of the instant motion for summary judgment.

At approximately 6:10 a.m. on September 15, 1998, plaintiff John D. Perkey was operating his tractor-trailer on the Pennsylvania Turnpike. *Defendants' Statement of Material Facts at ¶*

4

*1 and the plaintiffs' response thereto.* Perkey was traveling eastbound. *Id.* Defendant Bemben was traveling east on the Pennsylvania Turnpike ahead of the plaintiff when he was informed on his CB radio by another truck driver that there appeared to be a fire in the axle area of his rig. *Id.* at ¶3. Before Bemben was able to stop, the wheels broke away from an axle of Bemben's trailer. *Id.* at ¶4. The wheels continued to roll eastbound. *Id.* The plaintiff struck the wheels causing him to veer off the highway and crash. *Id.* at ¶5.

At the time of the accident, the plaintiff was employed by ABF Freight Systems, Inc. *Id.* at ¶2. Because the accident occurred in the course and scope of his employment, workers' compensation benefits were provided to the plaintiff. The workers' compensation benefits received by the plaintiff, in the amount of $181,096.62, were paid by ABF Freight Systems, Inc., which is self-insured as for its workers' compensation entitlements. *Plaintiffs' Counterstatement of Material Facts* at ¶¶2 & 3.

Defendant Reliable Carriers, Inc. owned the trailer being hauled by defendant Bemben. *Id.* at ¶7. Reliable is a Michigan Company. *Id.* at ¶8. The defendants were insured at the

5

time of the accident by Reliance Insurance Company. *Id.* at ¶10.
While this action was pending, Reliance became insolvent. *Id.* at
¶11.   The Michigan Property and Causalty Guaranty Association
assumed Reliance's duty to defend and indemnify the defendants in
this action.   *Id.*

Although titled as a motion for summary judgment, the
defendants are not actually requesting that judgment be entered in
their favor.  Rather, the defendants are seeking a declaration from
the court indicating that they are entitled to a setoff against any
verdict against them in the amount of any insurance, including
workers' compensation payments, paid or payable to the plaintiffs
as a result of this accident.   Since the defendants are not
seeking that judgment be entered in their favor, their summary
judgment motion will be denied.  However, because the issue of a
setoff for workers compensation benefits may arise post-trial and
the issue has been briefed in connection with the instant motion
for summary judgment, we will address the issue and will indicate
how we would rule if the issue were to be raised after a verdict
from the jury is received.

The issue of a possible set-off arises because the
defendants' insurance company has been liquidated and the Michigan

6

Property and Casualty Guaranty Association (MPCGA) has assumed the
duty to defend and indemnify the defendants in this action.

The parties cite to both the Michigan and Pennsylvania
Property and Casualty Insurance Guaranty Acts. A federal court
exercising diversity jurisdiction must apply the choice of law
rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*,
313 U.S. 487, 497 (1941); *Kruzits v. Okuma Mach. Tool, Inc.*, 40
F.3d 52, 55 (3d Cir. 1994). Pennsylvania is the forum state for
this court. "Under Pennsylvania's choice of law rules, a court
must first determine whether a conflict of law exists, and if no
conflict exists, it may apply Pennsylvania law." *Scirex Corp. v.
Federal Ins. Co.*, 313 F.3d 841, 847 n.1 (3d Cir. 2002). Neither
party has argued that there is conflict between Michigan and
Pennsylvania law. Accordingly, we apply Pennsylvania law although
we cite both Michigan and Pennsylvania law.

MPCGA was created by and its duties arise from the
Michigan Property and Casualty Guaranty Association Act.
Mich.Comp.Laws Ann. § 500.7901 et. seq. Similarly, the
Pennsylvania Property and Casualty Insurance Guaranty Association
(PPCIGA) was created by and its duties arise from the Pennsylvania
Property and Casualty Insurance Guaranty Association Act. 40 P.S.

7

§ 991.1801 et seq.  Both MPCGA and PPCIGA are associations of insurers in their respective states authorized to transact business in insurance. Mich.Comp.Laws Ann. § 500.7911; 40 P.S. § 991.1802 (definition of member insurer).  Membership in MPCGA, or in PPCIGA, is a condition of an insurer's authority to continue to transact business as an insurer in the respective state. Mich.Comp.Laws.Ann. § 500.7911; 40 P.S. § 991.1803(a).  MPCGA and PPCIGA are funded by assessments levied upon all member insurers. Mich.Comp.Laws Ann. § 500.7941; 40 P.S. § 991.1808.

Under the Michigan Guaranty Act, MPCGA shall "pay and discharge covered claims for the amount by which each covered claim exceeds $10.00."  Mich.Comp.Laws Ann. § 500.7931(a).  Under the Pennsylvania Guaranty Act, PPCIGA generally shall pay covered claims up to an amount of $300,000. 40 P.S. § 991.1803 (b). Covered claims are defined under the Michigan Guaranty Act as obligations of an insolvent insurer which 1) arise out of the insurance policy contracts of the insolvent insurer issued to residents of Michigan or payable to residents of Michigan on behalf of insureds of the insolvent insurer; 2) were unpaid by the insolvent insurer; 2) are presented as a claim to the receiver in Michigan or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings; 4)

8

were incurred or existed before, at the time of, or within 30 days after the date the receiver was appointed; 5) arise out of insurance policy contracts issued on or before the last date on which the insolvent insurer was a member insurer. Mich.Comp.Laws Ann. § 500.7925(1). A covered claim is defined under the Pennsylvania Guaranty Act as "an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article and . . . the claimant or insured is a resident of this Commonwealth at the time of the insured event . . . or the property from which the claim arises is permanently located in this Commonwealth." 40 P.S. § 991.1802. Under both the Michigan and Pennsylvania Acts covered claims do not include *inter alia* any amount in excess of an applicable limit provided in the insurance policy. Mich.Comp.Laws Ann. § 500.7925(2); 40 P.S. § 991.1803(b)(1)(ii). Further, both Acts exclude from the definition of covered claims any amount due an insurer. Mich.Comp.Laws Ann. § 500.7925(2)("Covered claims shall not include obligations to an insurer . . ."); 40 P.S. § 991.1802 ("The term shall not include any amount . . . due any . . . insurer . . . as subrogation recoveries or otherwise.").

9

The Michigan Guaranty Act contains a non-duplication of recovery provision which provides:

> If damages or benefits are recoverable by a claimant or insured under an insurance policy other than a policy of the insolvent insurer, or from the motor vehicle accident claims fund, or a similar fund, the damages or benefits recoverable shall be a credit against a covered claim payable under this chapter. If damages against an insured who is not a resident of this state are recoverable by a claimant who is a resident of his state, in whole or in part, from any insolvency fund or its equivalent in the state where the insured is a resident, the damages recoverable shall be a credit against a covered claim payable under this chapter.  An insurer of a fund may not maintain an action against an insured of the insolvent insurer to recover an amount which constitutes a credit against a covered claim under this section.  An amount paid to a claimant in excess of the amount authorized by this section may be recovered by an action brought by the association.

Mich.Comp.Laws Ann. § 500.7931(3).

The Pennsylvania Guaranty Act provides a non-duplication of recovery provision which provides:

> Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy.  For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross

and Blue Shield and all other coverages except
for policies of an insolvent insurer.  Any
amount payable on a covered claim under this
act shall be reduced by the amount of any
recovery under other insurance.

40 P.S. § 991.1817(a).

The defendants' contention that they are entitled to a
setoff against any verdict against them in the amount of workers
compensation benefits received by the plaintiff is based on the
non-duplication of recovery provision.  The parties appear to agree
that if the non-duplication of recovery provision is applicable and
a credit against a covered claim under the Guaranty Act is
appropriate, a proper method to apply the credit is by the court
molding the verdict after trial.  *See Baker v. Myers*, 773 A.2d 782,
793 (Pa.Super.Ct. 2001)("[W]e find the non-duplication of recovery
provision applies with equal vigor to a jury verdict and may be
applied in post-trial proceedings to mold the verdict.").  *See also*
*Corrigan v. Methodist Hospital*, 234 F.Supp.2d 494, 506 (E.D.Pa.
2002)(molding verdict to reflect an offset for workers'
compensation benefits received by the plaintiff).

Had the plaintiff received his workers' compensation
benefits from an insurance company it would be clear that a setoff
would be appropriate.  However, in this case the plaintiff received

11

his workers compensation benefits from his employer, ABF Freight
Systems, Inc., which is self-insured for workers' compensation
benefits.   We conclude that ABF Freight, as a self-insured
employer who paid workers' compensation benefits, should be treated
the same as an insurance company who paid workers' compensation
benefits.

Both the Michigan and Pennsylvania non-duplication of
recovery provisions use the term "insurance policy."  The plaintiff
did not receive his workers' compensation benefits pursuant an
"insurance policy" as that term is commonly understood.

Pursuant to Pennsylvania's Workers' Compensation Act,
ABF Freight is deemed to be an insurer. 77 P.S. § 29 (2002).  Also,
pursuant to Pennsylvania's Workers Compensation Act, ABF Freight
has a right of subrogation against any recovery by the plaintiff.
77 P.S. § 671.   The Guaranty Acts exclude from the definition of
"covered claims" obligations to an insurer.   It could be argued
that since ABF Freight is deemed to be an insurer under the
Workers' Compensation Act, any amount awarded to the plaintiff that
would in turn be payable to ABF Freight pursuant to its subrogation
interest is excluded from the definition of a covered claim and can
not be recovered by the plaintiff.   On the other hand, ABF Freight

12

cites the definition of insurer in the Pennsylvania Guaranty Act.
The Pennsylvania Act defines "Insurer" or "member insurer" as
"[a]ny insurance company, association or exchange which is licensed
to write and is engaged in writing within this Commonwealth, on a
direct basis, property and casualty insurance policies." 40 P.S. §
991.1802.  The Pennsylvania Act specifically defines "property and
casualty insurance policy" to exclude "workmen's compensation and
employer's liability insurance." 40 P.S. §991.1802.  ABF Freight
does not meet the definition of insurer in the Pennsylvania
Guaranty Act.

Nevertheless, we believe that the workers compensation
benefits received by the plaintiff should be deemed to be received
pursuant to an insurance policy as that term is used in the non-
duplication of recovery provisions of the Guaranty Acts.  The
Pennsylvania non-duplication of recovery provision defines a claim
under an insurance policy to include "worker's compensation."  ABF
Freight undertook to act as an insurer for purposes of workers'
compensation benefits and it should be held to the same risks as an
insurer, one of those risks being that it may not be able to
recover pursuant to its subrogation rights when one of its workers
is injured by a tortfeasor whose insurance company becomes
insolvent.  Accordingly, we conclude that the defendants are

13

entitled to a setoff against any verdict against them in the amount of the workers' compensation payments paid to the plaintiff as a result of the accident at issue in this case. *See Ventulett v. Maine Ins. Guaranty Assoc.*, 583 A.2d 1022, 1024 (Me. 1990)("Our holding that the presence of a deductible, the effect of which was to render Pennsylvania Truck Lines self-insured to the extent of Ventulett's compensation claim, makes no difference to the result of this particular case is reinforced by the fact that the workers' compensation law of Massachusetts under which Ventulett received compensation benefits defines as self-insuring employer as an 'insurer' for the purpose of its asserting subrogation rights against a third-party tortfeasor."); *Harris County v. Williams*, 981 S.W.2d 936, 941 (Tex.App. 1998)(holding that self-insured county's subrogation claim was excluded by the Texas Guaranty Act and stating that "[w]e will not distinguish between governmental entities that self-insure and those governmental entities that provide workers's compensation coverage under an insurance policy."). *But see Doucette v. Pomes*, 724 A.2d 481, 494 (Conn. 1999)("We join, therefore, the majority of courts that have decided the status of self-insured employers under an insurance guaranty act, and we hold that self-insureds employers are not insurers for purposes of Connecticut's guaranty act.").

14

ABF Freight Systems, Inc. has filed a motion to intervene in this action in order to protect its subrogation interest.   Given our conclusion that the defendants are entitled to a setoff against any verdict against them in the amount of the workers' compensation payments paid to the plaintiff as a result of the accident at issue in this case, ABF Freight's subrogation interest is necessarily extinguished.  Accordingly, we will deny the motion to intervene. *See Chow v. Rosen*, 812 A.2d 587, 590 (Pa. 2002)(holding that insurance company had no right to intervene in case where its subrogation interest extinguished by application of the non-duplication of recovery provision of the Pennsylvania Guaranty Act).  Further, we will deny the motion by ABF Freight for leave to file a brief in opposition to the defendants' motion for summary judgment.


AND NOW, this 30th day of May, 2003, **IT IS HEREBY ORDERED** that the defendants' motion (doc. 39) for summary judgment is **DENIED**.  **IT IS FURTHER ORDERED** that ABF Freight Systems, Inc.'s motion (doc. 43) to intervene is **DENIED** as is its motion (doc. 46)

15

for leave of court to respond to the defendants' motion for summary judgment.

/s. J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

DATED: May 30, 2003.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. PERKEY AND THERESA M. PERKEY, | :   **CIVIL NO. 1:00-CV-1639** |
|     Plaintiffs | : |
|     v. | :   (Magistrate Judge Smyser) |
| RELIABLE CARRIERS, INC., DANIEL JOSEPH BEMBEN, AND KENT, | :   JUN 1 2 2003 |
|     Defendants | : |

## MEMORANDUM AND ORDER

The plaintiffs, John E. Perkey and Theresa M. Perkey,
commenced this action by filing a complaint on September 14, 2000.
The defendants named in the complaint are Reliable Carriers, Inc.,
Daniel Joseph Bemben, and Kent.  The plaintiffs' claims arise out
of an automobile accident.  The plaintiff was allegedly injured
when the vehicle he was driving came into contact with trailer
wheels which had broken away from an axle of the trailer being
hauled by defendant Bemben.  Bemben was operating the tractor-
trailer for Reliable Carriers, Inc. and the trailer from which the
wheels has broken away was allegedly manufactured and/or designed
by Kent.

EXHIBIT "B"

Defendants Reliable Carriers, Inc. and Daniel Joseph Bemben filed an answer to the complaint and a cross-claim against defendant Kent on January 29, 2001.  Defendant Kent has not filed an answer to either the complaint or the cross-claim.  It appears that defendant Kent may not have been served with the summons and complaint in this case.

On February 16, 2001, a case management conference was held and a case management order was entered.

On October 12, 2001, the defendants filed a motion for a stay.  The defendants asserted that they are insureds of Reliance Insurance Company.  On October 3, 2001, the Commonwealth Court of Pennsylvania entered an order of liquidation of Reliance Insurance Company.  The Order of the Commonwealth Court stayed for 90 days all proceedings in the courts of the Commonwealth of Pennsylvania in which Reliance is obligated to defend a party.  The Order also requested on comity grounds that courts outside Pennsylvania and federal courts stay for 90 days any suit in which Reliance is obligated to defend a party.

2

By an Order dated October 26, 2001, the defendants'
motion for a stay was granted and this case was stayed for 90 days.
That stay was subsequently extended until April 3, 2002.

The parties consented to proceed before a magistrate
judge pursuant to 28 U.S.C. § 636(c).  The case is scheduled for a
jury trial beginning on July 7, 2003.

On April 15, 2003, the defendants filed a motion for
summary judgment.  By an Order dated May 30, 2003, we denied the
defendants' motion for summary judgment as well as a motion to
intervene and a motion for leave of court to respond to the
defendants' motion for summary judgment filed by ABF Freight
Systems, Inc.  ABF Freight was the plaintiff's employer and was
self-insured for workers' compensation benefits.  ABF Freight paid
to the plaintiff workers' compensation benefits.  The issue
underlying the defendants' motion for summary judgment and ABF
Freight's motion to intervene was whether or not the defendants are
entitled to a setoff against any verdict in the amount of workers'
compensation payments paid to the plaintiff as a result of the
accident.  Although we denied the defendants' motion for summary
judgment we indicated that because the issue of a setoff for
workers compensation benefits may arise post-trial we would address

3

the issue and indicate how we would rule if the issue were to be raised after a verdict from the jury is received.  We concluded that the defendants would be entitled to a setoff.  Given that conclusion, we further concluded that ABF Freight has no subrogation interest and we, accordingly, denied ABF Freight's motion to intervene and motion for leave to respond to the defendants' motion for summary judgment.

On June 9, 2003, ABF Freight filed a motion for reconsideration of the Order of May 30, 2003.  ABF Freight contends that the court erred in concluding that the defendants are entitled to a setoff and that, therefore, ABF Freight has no subrogation interest in this case.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  A district court may grant a party's motion for reconsideration when there exists: "(1) the development of an intervening change in the law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or prevent a manifest injustice."  *Cohen v. Austin*, 869 F. Supp. 320, 321 (E.D.Pa. 1994).  If there is no new evidence or no

4

clear error of law, the motion must be denied.  *Clifford v. Jacobs*, 739 F. Supp. 957, 958-59 (M.D.Pa. 1990).  Mere disagreement with the court does not translate into a clear error of law. *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F.Supp. 595, 611 (M.D. Pa. 1996).  "A motion for reconsideration is not a tool to relitigate and reargue issues which have already been considered and disposed of by the court." *Id.* "Nor is it to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment. *Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310, 314 (M.D. Pa. 1994), *aff'd*, 31 F.3d 1175 (3d Cir. 1994).  In the interest of finality, courts should grant motions for reconsideration sparingly.  *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D.Pa. 1992).

We addressed the issue of the defendants' right to a setoff as follows in the May 30, 2003 Memorandum and Order:

> The issue of a possible set-off arises because the defendants' insurance company has been liquidated and the Michigan Property and Casualty Guaranty Association (MPCGA) has assumed the duty to defend and indemnify the defendants in this action.
>
> The parties cite to both the Michigan and Pennsylvania Property and Casualty Insurance Guaranty Acts.  A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v.*

5

*Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941); *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Pennsylvania is the forum state for this court. "Under Pennsylvania's choice of law rules, a court must first determine whether a conflict of law exists, and if no conflict exists, it may apply Pennsylvania law." *Scirex Corp. v. Federal Ins. Co.*, 313 F.3d 841, 847 n.1 (3d Cir. 2002). Neither party has argued that there is conflict between Michigan and Pennsylvania law. Accordingly, we apply Pennsylvania law although we cite both Michigan and Pennsylvania law.

MPCGA was created by and its duties arise from the Michigan Property and Casualty Guaranty Association Act. Mich.Comp.Laws Ann. § 500.7901 et. seq. Similarly, the Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA) was created by and its duties arise from the Pennsylvania Property and Casualty Insurance Guaranty Association Act. 40 P.S. § 991.1801 et seq. Both MPCGA and PPCIGA are associations of insurers in their respective states authorized to transact business in insurance. Mich.Comp.Laws Ann. § 500.7911; 40 P.S. § 991.1802 (definition of member insurer). Membership in MPCGA, or in PPCIGA, is a condition of an insurer's authority to continue to transact business as an insurer in the respective state. Mich.Comp.Laws.Ann. § 500.7911; 40 P.S. § 991.1803(a). MPCGA and PPCIGA are funded by assessments levied upon all member insurers. Mich.Comp.Laws Ann. § 500.7941; 40 P.S. § 991.1808.

Under the Michigan Guaranty Act, MPCGA shall "pay and discharge covered claims for the amount by which each covered claim exceeds $10.00." Mich.Comp.Laws Ann. § 500.7931(a). Under the Pennsylvania Guaranty Act, PPCIGA generally shall pay covered claims up to an amount of $300,000. 40 P.S. § 991.1803 (b).

6

Covered claims are defined under the Michigan Guaranty Act as obligations of an insolvent insurer which 1) arise out of the insurance policy contracts of the insolvent insurer issued to residents of Michigan or payable to residents of Michigan on behalf of insureds of the insolvent insurer; 2) were unpaid by the insolvent insurer; 2) are presented as a claim to the receiver in Michigan or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings; 4) were incurred or existed before, at the time of, or within 30 days after the date the receiver was appointed; 5) arise out of insurance policy contracts issued on or before the last date on which the insolvent insurer was a member insurer. Mich.Comp.Laws Ann. § 500.7925(1). A covered claim is defined under the Pennsylvania Guaranty Act as "an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article and . . . the claimant or insured is a resident of this Commonwealth at the time of the insured event . . . or the property from which the claim arises is permanently located in this Commonwealth." 40 P.S. § 991.1802. Under both the Michigan and Pennsylvania Acts covered claims do not include *inter alia* any amount in excess of an applicable limit provided in the insurance policy. Mich.Comp.Laws Ann. § 500.7925(2); 40 P.S. § 991.1803(b)(1)(ii). Further, both Acts exclude from the definition of covered claims any amount due an insurer. Mich.Comp.Laws Ann. § 500.7925(2)("Covered claims shall not include obligations to an insurer . . ."); 40 P.S. § 991.1802 ("The term shall not include any amount . . . due any . . . insurer . . . as subrogation recoveries or otherwise.").

7

The Michigan Guaranty Act contains a non-duplication of recovery provision which provides:

> If damages or benefits are recoverable by a claimant or insured under an insurance policy other than a policy of the insolvent insurer, or from the motor vehicle accident claims fund, or a similar fund, the damages or benefits recoverable shall be a credit against a covered claim payable under this chapter. If damages against an insured who is not a resident of this state are recoverable by a claimant who is a resident of his state, in whole or in part, from any insolvency fund or its equivalent in the state where the insured is a resident, the damages recoverable shall be a credit against a covered claim payable under this chapter. An insurer of a fund may not maintain an action against an insured of the insolvent insurer to recover an amount which constitutes a credit against a covered claim under this section. An amount paid to a claimant in excess of the amount authorized by this section may be recovered by an action brought by the association.

Mich.Comp.Laws Ann. § 500.7931(3).

The Pennsylvania Guaranty Act provides a non-duplication of recovery provision which provides:

> Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is

8

> a first-party or third-party claim,
> and shall include, without
> limitation, accident and health
> insurance, worker's compensation,
> Blue Cross and Blue Shield and all
> other coverages except for policies
> of an insolvent insurer. Any amount
> payable on a covered claim under
> this act shall be reduced by the
> amount of any recovery under other
> insurance.

40 P.S. § 991.1817(a).

The defendants' contention that they are
entitled to a setoff against any verdict
against them in the amount of workers
compensation benefits received by the
plaintiff is based on the non-duplication of
recovery provision. The parties appear to
agree that if the non-duplication of recovery
provision is applicable and a credit against a
covered claim under the Guaranty Act is
appropriate, a proper method to apply the
credit is by the court molding the verdict
after trial. *See Baker v. Myers*, 773 A.2d
782, 793 (Pa.Super.Ct. 2001)("[W]e find the
non-duplication of recovery provision applies
with equal vigor to a jury verdict and may be
applied in post-trial proceedings to mold the
verdict."). *See also Corrigan v. Methodist
Hospital*, 234 F.Supp.2d 494, 506 (E.D.Pa.
2002)(molding verdict to reflect an offset for
workers' compensation benefits received by the
plaintiff).

Had the plaintiff received his workers'
compensation benefits from an insurance
company it would be clear that a setoff would
be appropriate. However, in this case the
plaintiff received his workers compensation
benefits from his employer, ABF Freight
Systems, Inc., which is self-insured for
workers' compensation benefits. We conclude
that ABF Freight, as a self-insured employer

9

who paid workers' compensation benefits,
should be treated the same as an insurance
company who paid workers' compensation
benefits.

Both the Michigan and Pennsylvania non-
duplication of recovery provisions use the
term "insurance policy."  The plaintiff did
not receive his workers' compensation benefits
pursuant an "insurance policy" as that term is
commonly understood.

Pursuant to Pennsylvania's Workers'
Compensation Act, ABF Freight is deemed to be
an insurer. 77 P.S. § 29 (2002).  Also,
pursuant to Pennsylvania's Workers
Compensation Act, ABF Freight has a right of
subrogation against any recovery by the
plaintiff. 77 P.S. § 671.   The Guaranty Acts
exclude from the definition of "covered
claims" obligations to an insurer.   It could
be argued that since ABF Freight is deemed to
be an insurer under the Workers' Compensation
Act, any amount awarded to the plaintiff that
would in turn be payable to ABF Freight
pursuant to its subrogation interest is
excluded from the definition of a covered
claim and can not be recovered by the
plaintiff.   On the other hand, ABF Freight
cites the definition of insurer in the
Pennsylvania Guaranty Act.  The Pennsylvania
Act defines "Insurer" or "member insurer" as
"[a]ny insurance company, association or
exchange which is licensed to write and is
engaged in writing within this Commonwealth,
on a direct basis, property and casualty
insurance policies." 40 P.S. § 991.1802.  The
Pennsylvania Act specifically defines
"property and casualty insurance policy" to
exclude "workmen's compensation and employer's
liability insurance." 40 P.S. §991.1802.  ABF
Freight does not meet the definition of
insurer in the Pennsylvania Guaranty Act.

10

Nevertheless, we believe that the workers compensation benefits received by the plaintiff should be deemed to be received pursuant to an insurance policy as that term is used in the non-duplication of recovery provisions of the Guaranty Acts.  The Pennsylvania non-duplication of recovery provision defines a claim under an insurance policy to include "worker's compensation." ABF Freight undertook to act as an insurer for purposes of workers' compensation benefits and it should be held to the same risks as an insurer, one of those risks being that it may not be able to recover pursuant to its subrogation rights when one of its workers is injured by a tortfeasor whose insurance company becomes insolvent.  Accordingly, we conclude that the defendants are entitled to a setoff against any verdict against them in the amount of the workers' compensation payments paid to the plaintiff as a result of the accident at issue in this case. *See Ventulett v. Maine Ins. Guaranty Assoc.*, 583 A.2d 1022, 1024 (Me. 1990)("Our holding that the presence of a deductible, the effect of which was to render Pennsylvania Truck Lines self-insured to the extent of Ventulett's compensation claim, makes no difference to the result of this particular case is reinforced by the fact that the workers' compensation law of Massachusetts under which Ventulett received compensation benefits defines as self-insuring employer as an 'insurer' for the purpose of its asserting subrogation rights against a third-party tortfeasor."); *Harris County v. Williams*, 981 S.W.2d 936, 941 (Tex.App. 1998)(holding that self-insured county's subrogation claim was excluded by the Texas Guaranty Act and stating that "[w]e will not distinguish between governmental entities that self-insure and those governmental entities that provide workers's compensation coverage under an insurance policy."). *But see Doucette v. Pomes*, 724 A.2d 481, 494 (Conn. 1999)("We join, therefore, the majority of courts that

11

> have decided the status of self-insured
> employers under an insurance guaranty act, and
> we hold that self-insureds employers are not
> insurers for purposes of Connecticut's
> guaranty act.").

*Memorandum and Order of May 30, 2003* at 6-14.

ABF Freight argues that the court erred in concluding that the defendants are entitled to a setoff and that, therefore, ABF Freight has no subrogation interest in this case. ABF Freight makes the same arguments it made in its motion to intervene and that the plaintiff made in opposition to the defendants' motion for summary judgment. The court has already considered those arguments. There is no basis for this court to reconsider its May 30, 2003 Order. If we erred in determining that the defendants are entitled to a setoff and that ABF has no subrogation interest in this case, the proper procedure to correct such an error is through an appeal at the appropriate time.

We note that ABF Freight cites the case of *Miles v. Van Meter*, 628 A.2d 1159 (Pa. Super. Ct. 1993). In *Miles*, the Pennsylvania Superior Court held that the Pennsylvania Workers' Compensation Security Fund could assert a subrogation lien against a claimant's recovery from an out-of-state insurance guaranty association. The court based its decision on its conclusion that

12

the Pennsylvania Workers' Compensation Security Fund did not meet the definition of insurer under the Pennsylvania Guaranty Act.

As the court in *Miles* concluded that the Pennsylvania Workers' Compensation Security Fund was not an insurer under the Act, we concluded that "ABF Freight does not meet the definition of insurer in the Pennsylvania Guaranty Act." *Memorandum and Order of May 30, 2003* at 13. Unlike the court in *Miles,* we nevertheless went on to conclude that the workers' compensation benefits received by the plaintiff were received pursuant to an insurance policy as that term is used in the non-duplication of recovery provision which defines a claim under an insurance policy to include "worker's compensation." *Miles* is distinguishable from this case because *Miles* was decided before the non-duplication of recovery provision in the Pennsylvania Guaranty Act was amended to specifically define a claim under an insurance policy to include "worker's compensation."

13

AND NOW, this 11th day of June, 2003, **IT IS HEREBY ORDERED** that the motion (doc. 70) for reconsideration filed by ABF Freight Systems, Inc. is **DENIED.**

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

DATED:    June 11, 2003.

14

Case No: 1:00-cv-01639-JAS    Document No: 72, User: rb, 1 Copy Printed: Jun, 11, 2003  04:52 PM

Michael A. Farrell
Farrell & Ricci, PC
4423 North Front St
Harrisburg, PA 17110

JUL - 3 2003

# NOTICE OF APPEAL TO THE UNITED STATES
# COURT OF APPEALS FOR THE THIRD CIRCUIT
# FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

File Number: *CV-00-1639*

| | |
|---|---|
| **JOHN D. PERKEY and** : <br> **THERESA M. PERKEY,** : <br> **Plaintiffs** : <br> : <br> **v.** : <br> : <br> : <br> **RELIABLE CARRIERS, INC.,** : <br> **DANIEL JOSEPH BEMBEN and** : <br> **KENT,** : <br> **Defendants** : | **Notice of Appeal** <br><br> **FILED** <br> HARRISBURG, PA <br><br> JUN 2 7 2003 <br><br> MARY E. D'ANDREA, CLERK <br> Per _____ |

TO:   John D. Perkey and Theresa M. Perkey, Plaintiffs; Reliable Carriers, Inc., Daniel Joseph Bemben, and Kent, Defendants; Marcus A. McKnight, III, Esquire, of *Irwin, McKnight and Hughes*; and, E. Ralph Godfrey, Esquire, of *Godfrey & Courtney, P.C.*, their respective attorneys.

Notice is hereby given that ABF Freight Systems, Inc., Intervenor, in the above named case, hereby appeal to the United States Court of Appeals for Third Circuit from the Magistrate Judge's Order denying ABF Freight Systems, Inc.

Certified from the record

Date _July 1, 2003_

Mary E. D'Andrea, Clerk

Per _Renee Bilalik_

Deputy Clerk

EXHIBIT "C"

(ABF) Motion for Reconsideration entered in this action on the 11th day of June 2003.

Michael A. Farrell, Esquire
Attorney I.D. No. 41067
Counsel for ABF Freight
      Systems, Inc., Intervenor

**Farrell & Ricci, P.C.**
4423 North Front Street
Harrisburg, PA 17110
(717) 230-9201

Date:  June 27, 2003

**GODFREY & COURTNEY, P.C.**

(VIA FAX ONLY)

June 26, 2003

Mark McKnight, Esquire
Irwin, McKnight & Hughes
West Pomfret Professional Building
60 West Pomfret Street
Carlisle, PA 17013-3222

Re:    *Perkey v. Bemben*

Dear Mark:

Please allow this letter to confirm our settlement of this matter for $55,000.00. This settlement does not include ABF's workers compensation lien. Accordingly, I will draft the release and forward it to you for your clients' signature. In addition, we will also file a mutual motion with the Court seeking its approval of this settlement. If the above is not accurate or should you have any questions, please contact me.

Very truly yours,

GODFREY & COURTNEY, P.C.

**COPY**

E. Ralph Godfrey

ERG:ae

*2215 Forest Hills Drive*

*Suite 36*

*P.O. Box 6280*

*Harrisburg, PA 17112-0280*

*telephone 717-540-3900*

*fax 717-540-3555*



Exhibit A

EXHIBIT "D"